USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 18 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

-v- : INFORMATION

NETELLER PLC, : S2 07 Cr. 0597 (PKC)

Defendant. :

- - - - - - - - - - - - - - - - - - - - - x

**COUNT ONE**
(Conspiracy)

The United States Attorney charges:

**Background**

1. At all times relevant to this Information, NETELLER PLC, the defendant, was a public company incorporated and based in the Isle of Man. On or about April 8, 2004, NETELLER PLC offered its shares to the public, and on April 14, 2004, NETELLER PLC was admitted to trade on the Alternative Investment Market ("AIM") of the London Stock Exchange. At its peak in September 2005, NETELLER PLC had a market capitalization of approximately $2 billion. NETELLER PLC is the successor in interest to NETeller Inc., a company incorporated in Alberta, Canada. NETELLER PLC was and is the parent to various subsidiaries, including NETeller (UK) Ltd., NT Service Ltd., and Cardload Inc.

2. At all times relevant to this Information, NETELLER PLC and its predecessors were in the business of

providing payment services to merchants who offered their services through the internet and to the general public through the internet, including individuals throughout the United States. The majority of the merchants who used the internet payment services of NETELLER PLC and its predecessors were internet gambling businesses that illegally offered gambling services, including sports betting, casino, and poker services, to the public in the United States.

**The NETeller Business**

3. In or about 1999, Stephen Eric Lawrence and John David Lefebvre, co-conspirators not named as defendants herein, began developing the internet payment system that was used by NETELLER PLC and its predecessors to provide internet payment services to the public. From the beginning, it was the intention of Lawrence and Lefebvre to provide internet payment services to internet gambling businesses and to customers who wished to wager with such businesses. Lawrence and Lefebvre each served NETELLER PLC and its predecessors in a variety of senior management positions. For example, Lawrence served as Chief Executive Officer of NETeller Inc. until December 2002, and he served as Chairman of the Board of Directors of NETELLER PLC until May 2006 and as a Member of the Board until October 14, 2006. Lefebvre served as President of NETeller Inc. until 2002, and he served as

a Non-Executive Member of the Board of Directors of NETELLER PLC until December 2005.

4. In July 2000, NETeller Inc. began transferring funds using bank wires and other means between customers located in the United States, including in the Southern District of New York, and internet gambling businesses located outside of the United States. In February 2001, NETeller Inc. began permitting individual customers, including customers in the United States, to transfer money directly to other individual customers, including customers outside of the United States.

5. Between 2000 and 2003, NETeller Inc. processed transactions for customers located in the United States totaling the following approximate amounts: 2000 - $13.3 million; 2001 - $117.6 million; 2002 - $326 million; and 2003 - $1.167 billion. Between 2000 and 2003, NETeller Inc. generated gross revenues from processing transactions for customers located in the United States in the following approximate amounts: 2000 - $289,000; 2001 - $2.1 million; 2002 - $7.1 million; and 2003 - $30.7 million.

6. On or about April 4, 2004, NETeller Inc. sold its business, including the assets, to NETeller Ltd., a company incorporated in the Isle of Man, and to its subsidiary, NT Services Ltd., a company incorporated in Alberta, Canada. On or

about April 1, 2004, NETeller Ltd. re-registered as a public company with the name NETELLER PLC.

7. Between 2004 and 2006, NETELLER PLC processed transactions for customers throughout the world totaling the following approximate amounts: 2004 - $3.4 billion; 2005 - $7.3 billion; and 2006 - more than $10 billion. Between 2004 and 2006, NETELLER PLC generated gross revenues from processing transactions for customers located in the United States in the following approximate amounts: 2004 - $64 million; 2005 - $123 million; and 2006 - $169 million.

**Payment Transferring Mechanisms**

8. At all times relevant to this Information, the principle users of the internet payment services provided by NETELLER PLC and its predecessors were customers located in the United States, including customers in the Southern District of New York, who used the payment services of NETELLER PLC and its predecessors to fund wagering accounts at internet gambling businesses located outside of the United States.

9. At all times relevant to this Information, customers with accounts at NETELLER PLC could deposit funds into their accounts at NETELLER PLC in a variety of different ways, including by electronic check, bank wire, credit card, and cash deposit at branches of a commercial bank located in the United States. Customers with accounts at NETELLER PLC could also

withdraw funds from their accounts at NETELLER PLC in a variety of different ways, including by electronic check, bank check, wire transfer, or with a NETeller ATM card.

10. At all times relevant to this Information, NETELLER PLC conducted financial transactions in the United States through nominee companies that it controlled but were in fact owned by Stephen Eric Lawrence and/or John David Lefebvre, including JSL Systems Corp. and F Cash Inc., both Delaware corporations. NETELLER PLC conducted its payment processing operations in the United States through nominee companies, at least in part, so that NETELLER PLC could avoid the jurisdiction of law enforcement and the courts in the United States.

11. At no time did NETELLER PLC or its subsidiaries or predecessors obtain a license from any state governmental authority or register with the federal government to operate a money transmitting business in the United States.

**Statutory Allegations**

12. From at least in or about June 1999, up through and including in or about January 2007, in the Southern District of New York and elsewhere, NETELLER PLC, the defendant, and its co-conspirators, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit,

violations of Title 18, United States Code, Sections 1084, 1955, 1956(a)(2), and 1960.

**Objects of the Conspiracy**

13. It was a part and an object of said conspiracy that NETELLER PLC, the defendant, and others known and unknown, being engaged in the business of betting and wagering, unlawfully, willfully, and knowingly would and did use a wire communication facility for the transmission in interstate and foreign commerce of bets, wagers, and information assisting in the placing of bets and wagers on sporting events and contests, and for the transmission of wire communications which did entitle the recipient to receive money and credit as a result of bets and wagers, and for information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, Section 1084.

14. It was further a part and an object of said conspiracy that NETELLER PLC, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did conduct, finance, manage, supervise, direct, and own all and part of various illegal gambling businesses, namely, internet gambling companies doing business in New York, in violation of New York State Penal Law, Article 225, in violation of Title 18, United States Code, Section 1955.

15. It was further a part and an object of the conspiracy that NETELLER PLC, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit, the operation of illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, the illegal transmission of wagers and gambling information, in violation of Title 18, United States Code, Section 1084, and the commission of gambling offenses, in violation of New York State Penal Law, Article 225, in violation of Title 18, United States Code, Section 1956.

16. It was further a part and an object of the conspiracy, from in or about October 2001 up through and including in or about January 2007, that NETELLER PLC, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business that transferred funds within the United States and to locations abroad on behalf of the public by means of wire, check, draft, facsimile, and courier, which funds were known to NETELLER

PLC to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity, to wit, illegal internet gambling, and thereby affected interstate and foreign commerce, in violation of Title 18, United States Code, Section 1960.

**Means and Methods of the Conspiracy**

17. Among the means and methods by which NETELLER PLC, the defendant, and its co-conspirators would and did carry out the conspiracy were the following:

a. NETELLER PLC opened merchant accounts at NETELLER PLC for numerous internet gambling businesses located outside of the United States, in part, so that the internet gambling businesses could provide real-money gambling services, including sports betting, casino, and poker services, to customers located in the United States.

b. NETELLER PLC opened member accounts at NETELLER PLC for numerous individuals located in the United States, in part, so that the individual customers could wager real money with the internet gambling businesses who had merchant accounts at NETELLER PLC.

c. NETELLER PLC transferred billions of dollars, comprised primarily of funds to be used to wager or funds representing gambling winnings, between individuals located in the United States and internet gambling businesses located

outside of the United States by means of electronic check, wire transfer, bank check, and credit card.

d. NETELLER PLC disguised its participation in financial transactions within the United States by conducting its operations through nominee companies that were controlled by NETELLER PLC but were owned by Stephen Eric Lawrence and/or John David Lefebvre.

**Overt Acts**

18. In furtherance of said conspiracy and to effect the illegal objects thereof, NETELLER PLC, the defendant, and its co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In June 1999, Stephen Eric Lawrence and John David Lefebvre began working together to develop online payment services for internet gambling businesses and for customers who wished to wager with such businesses.

b. Beginning in or about July 2000, and continuing up to in or about December 2003, Lawrence, Lefebvre, and others, offered online payment services through NETeller Inc. to various internet gambling businesses located outside of the United States so that these businesses could access customers located in the United States, including customers located in the Southern District of New York.

c. Beginning in or about January 2004, and continuing up to in or about January 2007, Lawrence, Lefebvre, and others offered online payment services through NETELLER PLC to various internet gambling businesses located outside of the United States so that these businesses could access customers located in the United States, including customers located in the Southern District of New York.

d. From in or about April 2004, and continuing up to in or about January 2007, NETELLER PLC transferred by means of wire transfer and otherwise billions of dollars from customers located in the United States, including customers located in the Southern District of New York, to various internet gambling businesses located outside of the United States.

(Title 18, United States Code, Section 371.)

**FORFEITURE ALLEGATION**

19. As the result of committing the gambling, money laundering, and unlicensed money transmitting offenses alleged in Count One of this Information, defendant NETELLER PLC shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982 and 1955(d) and 28 U.S.C. § 2461, all property, real and personal, involved in the money laundering and unlicensed money transmitting offenses and any property, including money used in the gambling offenses, and all property, real and personal, that constitutes or is derived from proceeds

traceable to the violations of 18 U.S.C. §§ 371, 1084, 1955, 1956, and 1960, including but not limited to, at least $1 billion dollars in United States currency.

Substitute Asset Provision

a. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 371, 981, 982, 1084, 1955, 1956, 1960 and Title 28, United States Code, Section 2461(c)).

Michael Garcia

MICHAEL J. GARCIA
United States Attorney